IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| MARY STATHAM,<br><br>    Plaintiff,<br><br>             v.<br><br>ETHICON, INC. and<br>JOHNSON & JOHNSON,<br><br>    Defendants. | Civil Action No.<br>1:19-cv-04893-SDG |

## ORDER

This matter is before the Court on Defendants Ethicon, Inc. and Johnson & Johnson's motion for partial summary judgment [ECF 40] and motion to exclude certain case-specific opinions of Plaintiff Mary Statham's expert, Dr. Steven H. Berliner [ECF 42]. For the following reasons, Defendants' partial motion for summary judgment [ECF 40] is **GRANTED IN PART** and **DENIED IN PART**, and the motion to exclude certain opinions of Dr. Berliner [ECF 42] is **GRANTED**.

I.   BACKGROUND

Defendants are corporations which, among other lines of business, design, market, and sell medical devices. Prior to November 2006, Statham experienced

health issues including the dropping of her uterus and vaginal discharge.[1] Statham was diagnosed with total uterine prolapse, anterior and posterior vaginal vault relaxation, and pelvic floor defect.[2] In an attempt to treat Statham's condition, on November 1, 2006, Dr. Shoba R.C. Rao performed surgery on Statham and implanted a Gynecare Total Prolift Pelvic Repair System ("Prolift").[3]

The Prolift is a polypropylene device manufactured by Defendants that was used to treat pelvic organ prolapse.[4] Statham contends the Prolift was defective and has caused her to suffer, among other things, vaginal mesh exposure, vaginal discharge, recurrent urinary tract infections, pressure to urinate, urinary frequency, burning with urination, and pelvic pain.[5] On August 8, 2014, Statham again had surgery, this time to remove two centimeters of exposed anterior vaginal mesh from her prior surgery.[6]

On January 14, 2013, Statham filed her "Short Form Complaint" in the United States District Court for the Southern District of West Virginia as part of a

---

[1]  ECF 41, at 2.

[2]  ECF 46, at 1; ECF 45-2.

[3]  ECF 45-2, at 3.

[4]  ECF 41, at 2.

[5]  *Id*; ECF 46, at 2.

[6]  ECF 45-2, at 7.

multidistrict litigation ("MDL") containing thousands of related cases consolidated before Judge Joseph R. Goodwin.[7] In this form Complaint, Statham alleged seventeen causes of action against Defendants.[8] After over six years of consolidated pretrial proceedings, this case was transferred from the Southern District of West Virginia to this Court on October 16, 2019.[9] At the time of the transfer, Defendants' partial motion for summary judgment and motion to exclude certain opinions of Dr. Berliner remained pending.[10] The Court now addresses each.

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Procedural History

On October 16, 2017, Defendants filed their motion for partial summary judgment.[11] Defendants request summary judgment on all of Statham's claims except those for strict liability—failure to warn (Count III); strict liability—design defect (Count V), and punitive damages (Count XVII). Statham filed a response to

---

[7]   ECF 1; ECF 41, at 6.

[8]   ECF 1, at 4–5. Statham did not include a claim for loss of consortium, which is listed in the short-form Complaint as Count XVI. *Id.* at 5.

[9]   ECF 66.

[10]  ECF 40; ECF 42.

[11]  ECF 40; ECF 41.

Defendants' motion on October 30, 2017.[12] Defendants filed a reply on November 3, 2017.[13]

### B.      Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment,

---

12   ECF 44; ECF 45.

13   ECF 47.

"and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the court in evaluating summary judgment. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## C. Discussion

### i. Defendants Are Entitled to Summary Judgment on Statham's Withdrawn Claims (Counts II, IV, VI–VIII, IX–XIII, XV, and XVIII).

In Statham's response to Defendants' motion for summary judgment, she expressly withdrew Counts II, IV, VI–VIII, IX–XIII, XV, and XVIII of her Complaint.[14] Since Statham has willingly abandoned these claims, they must be dismissed. *See Nave v. Ethicon Inc.*, No. 1:19-cv-04894-TWT, slip op. at 4 (N.D. Ga. Dec. 12, 2019).

---

14   ECF 46, at 2–3. ("[Statham] will not be proceeding with the following claims at trial . . . .").

### *ii.* **Defendants Are Not Entitled to Summary Judgment on Statham's Claims for Negligence (Count I) and Gross Negligence (Count XIV).**

Defendants also request summary judgment on Statham's claims for negligence (Count I) and gross negligence (Count XIV) as a matter of law.[15] Statham opposes summary judgment on both counts.[16]

#### 1. Choice of Law

"In a case founded on diversity jurisdiction, the district court must apply the forum state's choice of law rules." *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006). *See also Klaxon Co. v. Stento Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Georgia follows the doctrine of *lex loci delicti* in tort cases, pursuant to which "a tort action is governed by the substantive law of the state where the tort was committed." *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809 (2005). "The place where the tort was committed, or, the *locus delicti*, is the place where the injury sustained was suffered rather than the place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for an alleged tort takes place." *Bullard*

---

15   ECF 41, at 5–8.

16   ECF 46.

*v. MRA Holding, LLC*, 292 Ga. 748, 750–51 (2013) (*citing Risdon Enter., Inc. v. Colemill Enter., Inc.*, 172 Ga. App. 902, 903 (1984)).

Here, Georgia is the state where Statham suffered her alleged injury. She received the Prolift implant in a hospital in Stockbridge, Georgia and continued living in Georgia after the procedure.[17] Moreover, Statham and Defendants agree on the application of Georgia law.[18] The Court therefore applies Georgia substantive law to Statham's claims.

### 2. Georgia Law Permits Claims for Both Negligence and Strict Products Liability to Proceed.

Defendants contend summary judgment should be entered on Statham's claims for common law negligence and gross negligence because they are duplicative of her claims for strict products liability.[19] According to Defendants, Georgia has adopted the "risk-utility analysis" for both negligence and strict liability claims involving products, thus creating an overlap between the two theories of recovery.[20]

---

[17]  ECF 1; ECF 40, at 3–4; ECF 46, at 4.

[18]  ECF 46.

[19]  ECF 41, at 5.

[20]  *Id.* at 6.

Defendants are correct that Georgia has adopted the "risk-utility analysis" for both negligence and strict liability claims involving allegedly defective products. *Banks v. ICI Americas*, 264 Ga. 732, 734–35 (1994). "Under the risk-utility analysis, the risks inherent in a product design are weighed against the utility or benefit derived from the product." *Dean v. Toyota Indus. Equip. Mfg., Inc.*, 246 Ga. App. 255, 259 (2000) (*citing Banks*, 264 Ga. at 734). While no factor is dispositive, Courts generally examine:

> The usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, *i.e.*, the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger, and the user's ability to avoid danger; the state of the art at the time the product is manufactured; the manufacturer's ability to eliminate the danger without impairing the product's usefulness or making it too expensive; and the feasibility of spreading the loss in the price or by purchasing insurance.

*Id.* (*citing Banks*, 264 Ga. at 734).

Notwithstanding adoption of the risk-utility analysis for claims involving allegedly defective products, "Georgia law has long recognized a distinction between negligence and strict liability theories of liability." *Holler v. SFCA, Inc.*, No. 1:09-cv-3202-MHS, 2010 WL 11597143, at *3 (N.D. Ga. Feb. 9, 2010) (*citing Banks*, 264 Ga. at 735 n.3; *Battersby v. Boyer*, 241 Ga. App. 115, 117 (1999)). *See also*

*Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1355 (N.D. Ga. 2008) ("Claims for negligence against a manufacturer may be pled independent of strict liability claims.").

In *Banks*, the Georgia Supreme Court recognized that, while the basic inquiry for both negligence and strict liability claims involving allegedly defective products will overlap:

> [W]e cannot agree that the use of negligence principles to determine whether the design of a product was defective necessarily obliterates under every conceivable factual scenario the distinction Georgia law has long recognized between negligence and strict liability theories of liability.

264 Ga. at 735 n.3 (internal punctuation omitted). As such, the court held there was "no reason to conclude definitively that the two theories merge in design defect cases." *Id*. Since *Banks*, Georgia courts have "continued to honor that distinction." *S K Hand Tool Corp. v. Lowman*, 223 Ga. App. 712, 715 (1996) ("Blurred distinctions and overlapping principles notwithstanding, the Supreme Court in *Banks* recognized—and upheld—a distinction between strict liability and negligence theories."). In fact, Defendants concede that "[f]rom a technical standpoint, in

*Banks*, the Georgia Supreme Court did not extinguish negligence as a cause of action in products liability."[21]

Defendants nonetheless attempt to distinguish Statham's claim, arguing that "[Statham] has identified no distinguishing facts that establish that her negligence and gross negligence claims are separate and distinct from one another. . . ."[22] While this may very well be true, Defendants cite no authority for the proposition that a lack of factual distinction between the two claims thereby mandates dismissal under Georgia law. In fact, even if the facts underlying two claims overlap, Georgia law permits a plaintiff to "pursue alternative and inconsistent remedies at trial," although the plaintiff is "not permitted to recover its actual damages multiple times on each alternative theory of relief." *nVision Glob. Tech. Sols., Inc. v. Cardinal Health 5, LLC*, 887 F. Supp. 2d 1240, 1276 n.36 (N.D. Ga. 2012). *See also In re Friedman's Inc.*, 394 B.R. 623, 629 (S.D. Ga. 2008) ("[B]ecause the same facts underlie each claim, and the damages overlap, at trial the plaintiff would not be allowed to recover on both claims. The Court will thus allow the pleading of alternative theories of recovery, but no double recovery.").

---

21   ECF 41, at 7.

22   ECF 47, at 4.

Accordingly, Statham's strict liability claims do not require summary judgment dismissal of Statham's negligence claims.

### 3. Statham's Gross Negligence Claim Is Viable.

Separately, Defendants assert they are entitled to summary judgment as to Statham's claim for gross negligence because "it is only used in a few, isolated situations," and "[u]nder the facts of this case, gross negligence is nothing more than another way to allege negligence."[23]

Georgia law contains different statutory definitions for the torts of negligence and gross negligence. O.C.G.A. § 51-1-2 (negligence); O.C.G.A. § 51-1-4 (gross negligence). "Gross negligence is defined as the failure to exercise that degree of care that every man of common sense, however inattentive he may be, exercises under the same or similar circumstances; or lack of the diligence that even careless men are accustomed to exercise." *Currid v. DeKalb State Court Prob. Dep't*, 274 Ga. App. 704, 707 (2005). *See also Jones v. Amazing Prod., Inc.*, 231 F. Supp. 2d 1228, 1251 (N.D. Ga. 2002) ("Failure to exercise slight care constitutes gross negligence.") (*citing Werbell v. Walters*, 93 Ga. App. 378, 388 (1956)). Despite Defendants' characterization, Georgia law recognizes gross negligence as a viable

---

[23] *Id.*

and independent cause of action that applies beyond automobile cases. *See, e.g.*, *Jones*, 231 F. Supp. 2d at 1251 (holding gross negligence claims survive summary judgment in case involving common law negligence and strict products liability claims).

Defendants fail to cite any authority supporting the proposition that Statham cannot maintain her gross negligence claim in a product liability action, individually or in tandem with an ordinary negligence claim, as a matter of law. Therefore, Defendants' partial motion for summary judgment on Counts I and XIV is **DENIED**.

### III. MOTION TO EXCLUDE

On October 23, 2017, Defendants filed a motion to exclude specific testimony of Statham's expert Dr. Berliner pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993).[24] Defendants assert that Berliner's proposed testimony "regarding the warnings provided in the Gynecare Prolift ('Prolift') Instructions for Use ('IFU') is not based on reliable scientific evidence, nor is Dr. Berliner qualified to offer this opinion."[25]

---

[24] ECF 42, at 1.

[25] *Id.*

On November 6, 2017, Statham filed a response and expressly withdrew Dr. Berliner's opinions as to the adequacy of the warnings provided in the Prolift's IFU.[26] Statham asserts that she "does not intend to offer Dr. Berliner as an expert on the Prolift's warnings and the IFU and, therefore, withdraws his opinions as they relate to the Prolift IFU."[27]

In light of Statham's representations, Defendants' motion is **GRANTED** and Dr. Berliner will not be permitted to offer expert testimony at trial as to the adequacy of the warnings provided in the Prolift's IFU.

## IV.   CONCLUSION

Defendants' motion for summary judgment [ECF 40] is **GRANTED IN PART** and **DENIED IN PART**. Statham shall be permitted to proceed to trial on Counts I, III, V, XIV, and XVII of the Complaint. Defendants' motion to exclude certain opinions proffered by Dr. Steven H. Berliner [ECF 42] is **GRANTED**. Dr. Berliner shall not be permitted to testify at trial concerning the adequacy of the warnings provided in the Prolift's IFU.

---

[26]   ECF 48, at 1.

[27]   *Id.*

Pursuant to the Court's Standing Order, the parties shall file a proposed consolidated pretrial order within 30 days, in conformity with the Local Rules of this Court.

**SO ORDERED** this the 25th day of February 2020.

Steven D. Grimberg
United States District Court Judge